**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARCHIE BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12 C 49 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| ROSELAND COMMUNITY | ) | |
| HOSPITAL, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Archie Brown brought this suit against Roseland Community Hospital and one of its physicians Dr. Sajjad ("Defendants"). Brown was taken to Roseland after he cut his wrist during an interrogation at a Chicago police station. Brown asserts he told emergency room physician Dr. Sajjad that he was hearing voices telling him to kill himself and that he needed his psychiatric medication. Dr. Sajjad allegedly refused to refer Brown for a psychiatric consult or provide any treatment for his mental health needs.[1] Brown asserted both 42 U.S.C. § 1983 claims and state law claims of medical malpractice for not treating his psychiatric needs.

The Court previously granted in part Defendants' motion to dismiss and dismissed Brown's state law claims. Remaining are Brown's federal § 1983 claims that Dr. Sajjad and Roseland acted with deliberate indifference. Currently pending before the court is Dr. Sajjad's motion for summary judgment [52] and Roseland's motion to join Dr. Sajjad's motion [62]. The Court previously granted Roseland's oral request to join the summary judgment motion, and thus the motion to join [62] is

---

[1] The instant case is one of three suits Brown filed about deliberate indifference to his mental health needs. In case number 10 C 3609, Brown sued the officers who interrogated him and who allegedly ignored his requests for psychiatric care. The instant suit involves the allegedly inadequate care he received when taken to Roseland Hospital after he cut his wrist during the interrogation. Brown's third suit, case number 11 C 3610, named Cook County Jail officers as Defendants for ignoring his psychiatric needs, which allegedly resulted in another suicide attempt shortly after entering the jail following his Roseland visit. Brown settled his other two suits; the instant case is the only one currently pending.

granted. And, for the reasons stated below, the Court grants Dr. Sajjad's motion for summary judgment [52].

I.  **Summary Judgment Standard**

Summary judgment is appropriate if, construing all facts and drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence to permit a jury to return a verdict for the nonmoving party. *Carroll*, 698 F.3d at 564 (7th Cir. 2012). This Court neither judges the credibility of witnesses nor evaluates the weight of the evidence when addressing a summary judgment motion, *see Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009); however, Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The facts below are taken from Defendants' factual assertions in their N.D. Ill. Local Rule 56.1(a)(3) Statement of Material Facts, which are supported by the record and which Brown does not contest. Consistent with Local Rule 56.2, Defendants provided Brown with notice of his need to respond to their Rule 56.1 Statement, along with instructions as to how to respond. Despite being served with a Local Rule 56.2 Notice, Brown filed no responses pursuant to Local Rule 56.1(b)(3)(B); nor did he submit his own statement of facts pursuant to Local Rule 56.1(b)(3)(C). His status as a pro se litigant does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("we have never suggested that procedural rules in ordinary civil litigation should

be interpreted so as to excuse mistakes by those who proceed without counsel"); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even pro se litigants must follow rules of civil procedure"). The factual assertions in Defendants' Local Rule 56.1(a)(3) Statement are thus deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *see also Keeton v. Morningstar*, Inc., 667 F.3d 877, 880-81, 884 (7th Cir. 2012). Those facts are as follows.

**II.    Facts**

Brown was arrested shortly after midnight on April 8, 2010, for robbery of a Chicago family dollar store. (Doc. 56 at ¶ 3.) Later that day he was brought to Roseland Community Hospital's emergency room after he had cut his wrist while at a Chicago police station. (*Id.* at ¶¶ 1-2.) Dr. Sajjad treated Brown in Roseland's emergency room. (*Id.* at ¶ 4.) Dr. Sajjad provided emergency medical services pursuant to an employment agreement between himself and Emergency Medical Specialists ("EMS"). Dr. Sajjad was not employed by Roseland but rather by EMS. (*Id.* at ¶¶10, 11, 13.) EMS contracted with Roseland to provide emergency physician staffing services for the hospital. (*Id.* at ¶¶ 5,7.) Dr. Sajjad's agreement with EMS contained no language that Dr. Sajjad was contractually obligated to provide medical services to Chicago Police Department arrestees, detainees, or inmates. (*Id.* at ¶ 6.) EMS's agreement with Roseland contained no language that EMS's physicians had a contractual responsibility to provide medical services to Chicago police arresteees, detainees, or inmates. (*Id.* at ¶ 8.) Also, neither Roseland Community Hospital nor Dr. Sajjad had a contractual agreement with the Chicago Police Department to provide medical services for arrestees or detainees. (*Id.* at ¶¶ 9, 12); *see also* (Docs. 78-81) (copies of agreements between Roseland and EMS, EMS and Dr. Sajjad, and letters and affidavits addressing the absence of any agreements between Roseland and Dr. Sajjad with the Chicago Police Department). Dr. Sajjad provided medical services to Brown on April 8, 2010, in the same manner he would have provided services to anyone seeking emergency medical services. (Doc. 56 at ¶ 14.) Brown was discharged from Roseland at 1:35 a.m. on April 9,

2010. (*Id.* at ¶ 15.) At the time of Brown's discharge, Dr. Sajjad filled out an "Arrestee Medical Clearance Record," a form used for any arrestee, regardless which entity had custody of him, being released from a hospital. (*Id.* at ¶ 16.)

Brown does not contest any of the above-stated facts. Rather, he contends that Dr. Sajjad conspired with the police officers to deny Brown treatment for his mental health needs. (Docs. 88, 89.) Brown states that the officers did not want to make known Brown's suicide attempt because additional, costly security would have been required to monitor him. Brown asserts that the officers told Dr. Sajjad that Brown had accidentally cut his wrist on a foreign object. Dr. Sajjad, instead of doing his job, allegedly went along with the officers' version of the Brown's injury in order "to please the police" officers. (Doc. 88 at 2-3.)

**III. Analysis**

As noted above, the Court previously dismissed Brown's state law claims of medical malpractice.[2] This suit involves only federal claims that Dr. Sajjad and Roseland acted with deliberate indifference to Brown's serious mental health needs. To succeed on a § 1983 claim, Brown must prove: (1) the conduct complained of was committed by a person acting under color of law and (2) the conduct deprived him of a constitutional or a federal statutory right. *See Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007); *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003). Defendants contend that they are not state actors and that their conduct cannot be considered state action.

"When a plaintiff brings a section 1983 claim against a defendant who is not a government official or employee, the plaintiff must show that the private entity acted under the color of state law."

---

[2] On August 23, 2012, the Court granted Defendants' motion to dismiss Brown's state-law claims, given that he failed to meet the requirements of Illinois law 735 ILCS 5/2-622. Secion 5/2-622(a)(1) requires that state-law claims of medical malpractice be supported by a report that affirms that a qualified, licensed physician has reviewed the case and determined that "there is a reasonable and meritorious cause for the filing of such action." 5/2-622(a)(1); *see also Sherrod v. Lingle*, 223 F.3d 605, 613–14 (7th Cir. 2000). Because Brown included no such report with his complaint or in response to the motion to dismiss, the court dismissed the state-law claims and allowed this suit to proceed with only Brown's constitutional claims of deliberate indifference. (Doc. 36.)

*Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 822-23 (7th Cir. 2009). Two situations exist whereby § 1983 defendants may be found to have acted under color of state law. First, "when the state has cloaked the defendants in some degree of authority—normally through employment or some other agency relationship." *Case*, 327 F.3d at 567. Second, "when the defendants have conspired or acted in concert with state officials to deprive a person of his civil rights." *Id.*

The summary judgment evidence demonstrates that neither Dr. Sajjad nor Roseland Community Hospital can be considered a state actor. Private physicians may be deemed state actors when they assume the governmental entity's duty to provide medical care to persons within its custody, such as prison inmates, pretrial detainees, and arrestees. *West v. Atkins*, 487 U.S. 42, 54 (1988); *Rodriguez*, 577 F.3d at 827 ("when a physician is employed by the state to provide medical services to state prison inmates, that physician acts under the color of state law for purposes of section 1983"); *see also Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). It is unclear if Brown was an arrestee or a pretrial detainee when he was at Roseland; however, in either role, he was constitutionally entitled to receive adequate medical care.

To determine whether Dr. Sajjad or Roseland can be considered state actors, the Court must look to the relationship between these Defendants and the governmental entity and whether the care was provided pursuant to an agreement to fulfill the governmental entity's fulfillment of its "obligation to provide for the inmate's medical needs." *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 672 (7th Cir. 2012). Where a private physician or hospital voluntarily agrees to treat inmates, the providing of such services may be considered state action. *Id.* at 673. However, a hospital's emergency room treatment of an arrestee, pretrial detainee, or prisoner "does not mean that it has agreed to step into the shoes of the state and assume the state's responsibility toward these persons." *Rodriguez*, 577 F.3d at 828. "[A]n emergency medical system that has a preexisting obligation to serve all persons who present themselves for emergency treatment hardly can be said to have entered into a specific voluntary undertaking to assume the state's special responsibility to incarcerated persons." *Id.*

at 827-28 (citing Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd et seq.).

Neither Dr. Sajjad, nor EMS (his employer), nor Roseland had an agreement to provide medical services to arrestees or pretrial detainees. There is no evidence that either Defendant assumed the city or county's duty to provide adequate medical care for persons within their custody. The fact that Brown was in custody at the time he sought emergency room treatment does not render such treatment state action. *Rodriguez*, 577 F.3d at 828. Brown points to no evidence indicating an agreement by Defendants to provide medical care to arrestees or pretrial detainees. Without some agreement or relationship by either Defendant to assume the city or county's medical responsibilities to its arrestees and pretrial detainees, Defendants' conduct, by itself, cannot be considered state action. The summary judgment evidence thus demonstrates that neither Defendant can be considered a state actor.

Brown contends, however, that state action existed because Dr. Sajjad and Roseland conspired with the officers to deliberately ignore Brown's mental health needs. The Defendants do not address this issue; nevertheless, they are still entitled to summary judgment. "[T]o establish § 1983 liability through a conspiracy theory, 'a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents.'" *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012) (alteration in original) (quoting *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007)); *see also Pantaleo v. Hayes*, No. 08 C 6419, 2013 WL 5311450 at *10 (N.D. Ill. Sept. 20, 2013) (Lefkow, J.). Brown asserts that the officers did not want to classify him as a suicide risk because of the extra security involved and the probability that he would have stayed at the hospital for a psychiatric evaluation for days or even weeks. (Doc. 88 at 2-3.) Brown contends that Dr. Sajjad, "wanting to please the police," joined in the officers' indifference to Brown's mental health needs. (*Id.* at 3.) Brown cites no evidence to support his contention and the record is devoid of any evidence of an agreement between Dr. Sajjad and the police officers to act with deliberate indifference to Brown's

mental health needs. "[A] conspiracy certainly may be established by circumstantial evidence," but "such evidence cannot be speculative." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003). To survive a summary judgment motion on a § 1983 conspiracy claim, Brown "must demonstrate the existence of an agreement or acts 'sufficient to raise the inference of mutual understanding'" between Dr. Sajjad and the officers. *Travis v. Keiper-Knapp*, No. 09 C 3469, 2011 WL 5395821 at *4 (N.D. Ill. Nov. 8, 2011) (Kendall, J.), quoting *Admunsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000).

Although Defendants do not address Brown's conspiracy theory in their summary judgment motion or reply, "when a plaintiff fails to produce evidence, the defendant is entitled to judgment; a defendant moving for summary judgment need not produce evidence of its own." *Marion v. Radtke*, 641 F.3d 874, 876–77 (7th Cir. 2011); *see also Arnett v. Webster,* 658 F.3d 742, 760 (7th Cir. 2011). "[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Arnett*, 658 F.3d at 760 (internal citation and quotation marks omitted). Brown's inability to submit evidence of a conspiracy may be the result of his pro se status. However, his "pro se status doesn't alleviate his burden on summary judgment." *Id.* (quoting *Marion*, 641 F.3d at 876-77). Brown's unsupported speculations about an agreement between Dr. Sajjad and officers to deprive Brown of psychiatric treatment are insufficient to survive summary judgment for Defendants.

Based upon the summary judgment evidence, which contains no evidence of an agreement between Dr. Sajjad or Roseland to treat arrestees or pretrial detainees, as well as no evidence of a conspiracy between Dr. Sajjad and police officers to deprive Brown of mental health care, summary judgment is granted in favor of Defendants.

**IV.    Conclusion**

For the reasons stated above, the Court grants Roseland Community Hospital's motion to join Dr. Sajjad's motion for summary judgment [62]. The Court also grants Defendants' motion for summary judgment [52] and enters judgment in favor of Defendants and against Plaintiff. Plaintiff

Archie Brown's claims are dismissed. The Court also denies Plaintiff's motion for supplemental jurisdiction over his state-law claims [72], as the Court addressed this contention in its orders of 8/23/12 [see 36] and 3/21/13 [see 49].

Dated: 12/23/13

_____
Robert M. Dow, Jr.
United States District Judge